*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-115

SEPTEMBER TERM, 2014

| | |
|---|---|
| In re R.S., C.S., J.S., D.S., B.S., S.S. and Z.S., Juveniles | } APPEALED FROM:<br>}<br>} Superior Court, Franklin Unit,<br>} Family Division<br>}<br>}<br>} DOCKET NOS. 18/19/20/21/22/23/<br>24-1-13 Frjv |

Trial Judge: Howard A. Kalfus

In the above-entitled cause, the Clerk will enter:

Mother appeals from the termination of her parental rights in R.S., C.S., J.S., D.S., B.S., S.S. and Z.S. Father is deceased. Mother argues that the court erred by failing to assess the effect that the termination of her rights would have on the children. We affirm.

Mother has never been the children's primary caretaker for any extended period. In January 2013, following their father's death, the children were taken into emergency custody of the Department for Children and Families (DCF). In April 2013, mother admitted that the children were in need of care and supervision (CHINS) as she had abandoned them in May 2012, and after that, only parented them for a short time following father's death. Mother also lacked adequate housing for the children. In October 2013, DCF moved to terminate mother's rights. Following a hearing, the court concluded that termination of mother's rights was in the children's best interests.

The court made the following findings, none of which mother challenges on appeal. Mother is thirty-one and the mother of eight children. Mother became pregnant with Z.S. when she was seventeen. She dropped out of school and moved in with father and his parents. Z.S. was born in December 2000; S.S. in January 2002; B.S. in September 2004; D.S. in June 2006; J.S. in March 2008; C.S. in December 2010; and R.S. in December 2011. In addition to the children listed above, mother has an eight-month-old child with her current boyfriend. Mother has never worked nor, with the exception of the eight-month-old baby, has she ever been the children's primary caregiver for any extended period of time. Until his death in December 2012, father and his parents, along with mother's mother, provided the majority of care for the children.

In March 2012, mother reconnected with her current boyfriend and several months later, moved to Pennsylvania with him. Mother left without warning and without saying goodbye, or even informing the children of the move. Mother remained in Pennsylvania, with only a brief return to Vermont, until October 2012, when she and her boyfriend returned to Vermont. Mother and her boyfriend then lived with the boyfriend's mother until April 2013, when they were

forced to leave. During this time, with mother's knowledge, the boyfriend's mother was dealing illegal drugs from the home.

Between October 2012 and father's death, mother had very little contact with and did not attempt to care for any of the children. She did allow two of the children to spend the night with her in November 2012, but mother refused a third child's request to come along, indicating that it would be too much for her.

The court found that mother functions at a very low level intellectually. Her intellectual deficits impeded her ability to meet the children's needs, particularly as the children developed. Mother attempted to have visitation with all seven children at once but this was overwhelming to her and not beneficial for the children. The visits were restructured to allow mother to visit with a few children at a time. The court found that mother continued to be overwhelmed when having to parent more than just one or two children. She was also incapable of meeting the emotional or developmental needs of children beyond the toddler stage. While mother loved the children and wanted to parent them, she lacked the ability and functioning required to do so.

The court also noted that mother had not attended father's wake; she was instead attempting to obtain father's death benefits on that day. The court found that this demonstrated mother's inability to understand the children's emotional needs. The court also recounted that mother had received $23,000 in benefits following father's death. She spent only $2,000 of this money on the children. Mother either intentionally spent the remainder of the funds in a way that did not benefit the children, or, more likely, she failed to prevent her boyfriend from taking advantage of her limitations and spending the money.

As to the children, the court found that they had been living with their paternal grandparents since 2012. The grandparents were meeting the children's needs, and the children had adjusted very well to their home. The court found it important and very beneficial for the children to remain together in the same home, particularly as they continued to address the emotional issues surrounding their father's death. The court made specific findings concerning each child's relationship with mother. Mother's relationship with some children was strained or otherwise challenging, and with others more positive. She did not play a constructive role in most of their lives, and with respect to the two children in whose lives her role was "somewhat constructive at times," mother would not be able to meet their developmental needs if they were reunified with her.

Turning to the statutory best-interest factors, the court concluded that mother could not parent any of the children within a reasonable period of time and that she had not played a constructive role in their lives. The court reiterated that separating the children from one another would be very detrimental to their well-being. It found mother incapable of providing the children with the support that they all needed and that they could provide to each other as they coped with their father's death and mother's abandonment of them. For these and other reasons, the court concluded that it was in the children's best interests that mother's rights be terminated so that the children could have the permanency and stability that they needed. Mother appealed from this order.

Mother asserts that the court erred by failing to assess the effect that losing his or her relationship with mother would have on each child. She points to the court's conclusion that it would be detrimental to the children were they to be separated from one another, and asserts that

2

the court was obligated to make a similar finding with respect to the termination of her relationship with them.

We find no error. As we have often repeated, the trial court must consider four statutory factors in assessing a child's best interests: the relationship of the child with his or her parents, siblings, foster parents, and others who may significantly affect the child's best interests, the child's adjustment to his or her home, school, and community, the likelihood that the parent will be able to resume or assume parental duties within a reasonable period of time, and whether the parent has played and continues to play a constructive role in the child's welfare. See 33 V.S.A. § 5114.

The most important factor is the likelihood that the parent will be able to resume his or her parental duties within a reasonable period of time. See In re B.M., 165 Vt. 331, 336 (1996). As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings. In re G.S., 153 Vt. 651, 652 (1990) (mem.).

In conducting its analysis, the trial court properly considered mother's relationship with each of the children, and the interaction and interrelationship of each child with his or her siblings. 33 V.S.A. § 5114(a)(1). It acknowledged that most of the children had good or very good relationships with mother, and that all of the children love their mother and she loves them. With respect to mother's role in the children's welfare, however, the court concluded that mother's role was either not constructive, or that mother would not be able to meet the child's developmental needs in the event of reunification. Id. § 5114(a)(4). The court considered all of the children's adjustment to their foster home, school, and community, as well as the likelihood that mother would be able to resume or assume parental duties within a reasonable period of time. Id. § 5114(a)(2), (3). Weighing all of these factors, the court concluded that terminating mother's parental rights was in their best interests. In this case, mother's inability to meet the children's needs, and to play a constructive role in their lives, as well as their positive adjustment to their current circumstances, outweighed the acknowledged positive relationship that she has with most of the children. The court applied the appropriate standard in reaching its decision, and its findings, all of which are unchallenged, amply support its conclusion.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

3